```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/30/2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

INCINIA CONTRACTING, INC.,

                Plaintiff,

-against-

EVANSTON INSURANCE COMPANY, and
MARKEL SERVICE, INC.

                Defendants.

23-CV-10917 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

Plaintiff Incinia Contracting, Inc. ("Incinia") brings this action against Defendants Evanston Insurance Company ("Evanston") and Markel Service, Inc. ("MSI") alleging breach of contract and seeking a declaratory judgment that Evanston—under the terms of an insurance contract executed with Incinia—must provide coverage to two insureds under the insurance contract. Currently before the Court is Defendants' motion to dismiss for lack of subject-matter jurisdiction and failure to state a claim. For the reasons discussed below, the motion is granted as to the dismissal of MSI from this action and denied in all other respects.

## BACKGROUND

### I. RELEVANT FACTS[1]

The facts are undisputed. Incinia is a contracting company that performs services such as asbestos abatement and avian removal. Evanston is an insurance company. MSI is a "claims service manager" or "claims administrator" for Evanston.

---

[1] The following facts are taken from the Amended Complaint (the "Complaint") and are assumed true for the purpose of resolving the motion to dismiss. The Court shall refer to the parties' memoranda of law in support and opposition to the motion to dismiss as follows: Dkt. No. 29 ("Mot."); Dkt. No. 33 ("Opp."); & Dkt. No. 34 ("Reply").

1

Incinia was hired as a subcontractor by a construction company called Hollister Construction Service ("Hollister") to perform avian removal and asbestos abatement at a warehouse owned by CityMeals on Wheels, Property LLC ("CityMeals"). Compl. ¶¶ 10–11. Hollister and Incinia executed a Project Agreement (the "Project Agreement") to perform the specialized services. *Id.* ¶ 11. Additionally, Hollister and Incinia had previously executed a Master Subcontract General Conditions Agreement (the "Master Agreement").[2] The Project Agreement and the Master Agreement, by the terms of the Project Agreement, together comprised the "Subcontract." *Id.* ¶ 13.

Two provisions of the Master Agreement are relevant to this dispute. First, the Master Agreement required Incinia to obtain insurance policies that included the "Owner" (here meaning CityMeals) and the "Construction Manager" (here meaning Hollister) as "additional insured." *Id.* ¶ 14. Second, the Master Agreement obligated Incinia to "defend, indemnify and hold harmless the Construction Manager [and] the Owner . . . from and against . . . any liability for damages because of bodily injury." *Id.* ¶ 15.

Pursuant to its contractual obligation, Incinia purchased a general liability insurance policy (the "Policy") from Defendant Evanston. *Id.* ¶ 18. The Policy excluded coverage for "bodily injury" of Incinia's employees (the "Employee Exclusion" or the "Exclusion"). *Id.* ¶ 20. The bottom of the Exclusion features the following language, comprising a carveout to the Exclusion: "This exclusion does not apply to liability assumed by the insured under an 'insured

---

[2] Plaintiff refers to this agreement as the "Subcontract Agreement." Compl. ¶ 12. The Master Subcontract General Conditions Agreement, however, refers to itself as the "Master Agreement" and refers to itself together with the Project Agreement as comprising the "Subcontract." Accordingly, the Court refers to the Master Subcontract General Conditions Agreement as the "Master Agreement" and refers to the Master Agreement together with the Project Agreement as the "Subcontract."

2

contract'" (the "Insured-Contract Carveout" or the "Carveout"). *Id.* The Policy defined an 'insured contract' in relevant part to include "part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for 'bodily injury' . . . provided the 'bodily injury' . . . is caused, in whole or in part, by you or by those [acting] on your behalf." *Id.*

The genesis of this action occurred on November 11, 2016, when Incinia's employee Marlon Garcia was hit by a falling "paraclamp" while performing asbestos removal. *Id.* ¶¶ 22–23. Garcia filed suit in State court against CityMeals, who impleaded Incinia. *Id.* ¶¶ 26–27. CityMeal's third-party complaint "asserted five causes of action," including "breach of contract for failure to procure insurance." *Id.* ¶ 27. Travelers Insurance Company, who is providing insurance to CityMeals and Hollister, submitted a tender to Evanston after the Garcia lawsuit began. On November 9, 2017, a law firm representing Defendant MSI submitted a letter denying coverage and "disclaim[ing] any obligation [by Evanston] to defend or indemnify CityMeals" in the Garcia Lawsuit. *Id.* ¶ 28. The letter identified MSI as "claims service manager for Evanston." *Id.*

On May 1, 2018, Garcia began a second lawsuit against Hollister. *Id.* ¶ 32. The actions were consolidated (the "Underlying Action"), and both CityMeals and Hollister cross claimed against Incinia "for common-law and contractual indemnification, contribution, and breach of contract for failure to procure insurance." *Id.* ¶¶ 34–35. Evanston has provided Incinia coverage for its defense costs incurred in litigating the Underlying Action. *See, e.g.*, Mot. at 9–10. But Evanston maintains that coverage under the Policy does not apply to CityMeals or Hollister, and so has declined to fund defense costs or indemnify them. *Id.* at 10–12.

## II.   PROCEDURAL HISTORY

Incinia filed an action against Defendants Evanston and MSI in State court on November 7, 2023.  *See* Dkt. No. 1-1 (the "First Complaint").  Incinia sought a declaratory judgment that Evanston was required to indemnify CityMeals and Hollister and alleged that—by denying coverage to CityMeals and Hollister—Evanston was in breach of its insurance contract with Incinia.  *Id.* ¶¶ 51–59.  Defendants removed the matter to this court on December 15, 2023, citing diversity jurisdiction.  *See* Dkt. No. 1 (Notice of Removal).  Defendant MSI moved to dismiss itself from the case on February 16, 2024, arguing that the First Complaint failed to state a claim against it because MSI was not a signatory to the Policy and did not make coverage determinations.  *See* Dkt. Nos. 11–12.  Incinia filed an amended complaint (the "Complaint") responding to the motion to dismiss on April 5, 2024.  *See* Dkt. No. 24.  Defendants then filed a supplemental motion to dismiss on April 26, 2024.  *See* Dkt. Nos. 28–29. The motion to dismiss makes three arguments: (1) Incinia lacks standing to bring claims on behalf of CityMeals and Hollister; (2) Evanston properly denied coverage due to the Employee Exclusion; and (3) the Complaint fails to state a claim against MSI.  *See* Mot. at 6–18.  The motion has been fully briefed and is ripe for disposition.  *See* Dkt. Nos. 29, 33, & 34.

## DISCUSSION

Having reviewed the Complaint, the Court determines that Incinia has failed to state a claim against MSI.  Nevertheless, Incinia has standing to bring this action, and Defendants' coverage arguments fail.  Accordingly, the Court will grant the motion to dismiss MSI from the action and deny the motion in all other respects.

4

I.  **STANDARD OF REVIEW**

Because Defendants' motion to dismiss argues that Incinia lacks standing, the Court will construe that aspect of the motion as being brought under Federal Rule of Civil Procedure 12(b)(1). To survive a motion to dismiss under Rule 12(b)(1), a plaintiff bears the burden of clearly alleging facts demonstrating each element of standing. *Warth v. Seldin*, 422 U.S. 498, 517–18 (1975).[3] A plaintiff must make out the standing requirements "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specifics facts that are necessary to support the claim." *Id.* And "[f]or purposes of ruling on a motion to dismiss for want of standing, [the trial court] must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth*, 422 U.S. at 501. But the Court "need not credit a complaint's conclusory statements without reference to its factual context." *Connecticut Parents Union v. Russell-Tucker*, 8 F.4th 167, 172 (2d Cir. 2021) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145–46 (2d Cir. 2011).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where,

---

[3] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes and omissions, and adopt alterations.

5

as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. The Court must assume all well-pled facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012); *see also A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993) ("[A]ll allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party."). However, the Court need not accept conclusory assertions. *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 321 (2d Cir. 2021).

## II.  INCINIA HAS STANDING TO BRING THIS ACTION BECAUSE IT ALLEGES THAT EVANSTON VIOLATED INCINIA'S CONTRACTUAL RIGHTS

Article III extends the judicial power to "Cases" and "Controversies." Art III, § 2. Standing doctrine derives from the traditional understanding of these terms and serves to "ensure that federal courts do not exceed their authority." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Standing consists of three elements. First, a plaintiff must suffer an injury in fact. Second, the injury must be fairly traceable to the defendant's challenged conduct. And third, the injury must be redressable by a favorable judicial ruling. *See Lujan*, 504 U.S. at 560–61. Because standing doctrine is grounded in historical practice, a court looks to whether an injury can be analogized to a claim at common law. *See Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 775–77 (2000). A litigant has standing to bring a claim cognizable at common law or bearing a "close relationship" to a harm traditionally recognized at common law. *TransUnion LLC*, 594 U.S. 413, 433 (2021). "In looking to whether a plaintiff's asserted harm has a 'close relationship' to a harm traditionally recognized [at common law] . . ., we do not require an exact duplicate." *Id.* Finally, the Supreme Court has chastened courts to not

"make standing law more complicated than it needs to be." *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 547 (2020).

Insurance policies are contracts. *Dubuisson v. Stonebridge Life Ins. Co.*, 887 F.3d 567, 569 (2d Cir. 2018); *Utica Mut. Ins. Co. v. Fireman's Fund Ins. Co.*, 957 F.3d 337, 344 (2d Cir. 2020). Incinia alleges that Evanston violated the terms of the Policy that obligated Evanston to—among other things—indemnify and hold harmless Hollister and CityMeals. Because Evanston is not doing either, Incinia contends that Evanston is breaching its contract within Incinia. That suffices to confer standing.

Breach of contract was a quintessential harm traditionally recognized at common law. *See, e.g.*, *Attias v. Carefirst, Inc.*, 346 F.R.D. 1, 9 (D.D.C. 2024) ("American courts dating back to the Founding have permitted plaintiffs to bring suit based on . . . a breach of contract."); *Marzetti v. Williams*, (1830) 109 Eng. Rep. 842, 845 (K.B.) ("[I]t is immaterial in such a case whether the action in form be in tort or in assumpsit. It is substantially founded on a contract; and the plaintiff, though he may not have sustained a damage in fact, is entitled to recover nominal damages."); *see generally Springer v. Cleveland Clinic Emp. Health Plan Total Care*, 900 F.3d 284, 292–93 (Thapar, J., concurring) (explaining that claimants alleging breach of contract claims have standing under Article III). Accordingly, Incinia has standing to bring this breach of contract action. *TransUnion LLC*, 594 U.S. at 433.

Consistent with this conclusion, courts in this circuit have routinely permitted actions by parties seeking a declaratory judgment that an insurer must defend and indemnify a third party. *See Endurance Am. Specialty Ins. Co. v. Century Sur. Co.*, 630 F. App'x. 6, 7–8 (2d Cir. 2015) (addressing arguments by insured Harden *and* insurer Endurance that insurer Century was obligated to defend and indemnify Hayden); *Houston Casualty Co. v. Prosight Specialty Ins.*

7

*Co.*, No. 18-CV-09574 (PAE), 2020 WL 4340383, at *1 (S.D.N.Y. July 28, 2020) ("[T]his court resolved a dispute between the parties as to the scope of the duty of defendant New York Marine Insurance Company . . . to defend an additional insured, New York University Hospitals Center ('NYUHC'), in state-court litigation" (an entity that was not party to the litigation)); *Travelers Indem. Co. of Am. v. Sw. Marine & Gen. Ins. Co.*, No. 21-CV-01828 (JMA), 2023 WL 2706254, at *4 (E.D.N.Y. Mar. 30, 2023) (ruling that, concerning an insured who was not a party to the litigation, "[p]laintiff is granted a declaratory judgment that . . . Defendant is obligated to defend the Additional Insured in the Underlying action"); *see also Zurich Am. Ins. Co. v. Wausai Bus. Ins. Co.*, No. 16-CV-03643 (VSB), 2018 WL 4684112, at *1–2 (E.D.N.Y. Sept. 28, 2018) (addressing claim by an insured and insurer that another insurer had a duty to defend other non-party insured entities in an underlying lawsuit).[4]

Opposing this conclusion, Defendants argue that Incinia is seeking to vindicate the rights of third parties, Hollister and CityMeals. Mot. at 6–7. Because Incinia has not pleaded the requirements for third party standing, Defendants argue, the Court must dismiss the action for lack of standing. This case does not present a third-party standing issue. Incinia alleges that Evanston is violating the contract that Incinia and Evanston entered that Incinia paid Evanston to perform. Hence, Incinia is suing to enforce its contractual rights on behalf of itself. The fact that Hollister and CityMeals (or Travelers) may benefit from Incinia enforcing its contractual rights does not transform this case into one of third-party standing. Furthermore, Hollister and CityMeals in the Underlying Action allege breach of contract against Incinia by failing to secure

---

[4] Plaintiff argues that "[i]t is well settled that a party to an insurance policy (or successor in interest thereto) may seek declaratory relief on behalf of non-party additional insureds who were improperly denied coverage" and proceeds to cite four state court cases. Opp. at 16–17 (citing authority omitted). Because State courts are not bound by Article III's limitation, those cases cannot assist the Court in its standing analysis.

8

insurance as required by the Master Agreement. Hence, due to Evanston's alleged breach of contract, Incinia faces an increased scope of liability in the state court action. That increase in liability owing to the alleged breach provides further indication of Incinia's standing in this action.

Defendants argue that Incinia lacks standing also because Evanston is currently indemnifying Incinia for defense costs associated with the Underlying Action. Mot. at 9–10. This argument holds no water. The Policy obligated Evanston to indemnify *all* the insureds: Incinia, Hollister, and CityMeals. Incinia alleges that Defendants are violating the contract by denying coverage to Hollister and CityMeals. Defendants cannot defeat standing by arguing that they are complying with *parts* of the contract.

Finally, Defendants attempt to analogize this case to the Second Circuit's decision in *City of New Haven v. Insurance Co. of the State of Pa.*, 510 F. App'x 70 (2d Cir. 2013). In that case, two police officers sued a city for damages arising from a car accident. *City of New Haven v. Ins. Co. of the State of Pa.*, No. 10-CV-02047 (JCH), 2012 WL 774987, at *1 (D. Conn. Mar. 8, 2012). The city then sought a declaratory judgment that it was entitled to coverage after the city's insurer denied coverage, citing an employee exclusion. *Id.* at *2. The city argued that the exclusion should not apply to the city because—if the police officers had sought coverage directly—then the exclusion would not apply to them. *Id.* at *3–4. The district court rejected that argument, *id.* at *4, and the Second Circuit affirmed. *New Haven*, 510 F. App'x at 72.

The present case is readily distinguishable from *New Haven*. First, there was no allegation in that case that the insurance company wrongfully denied coverage to the police officers in violation of the city's contractual rights. And second, the city was attempting to stand in the police officer's shoes to demand that the insurer provide coverage to the city. In effect, the

city was attempting to make an end run around the applicable employee exclusion. By contrast, Incinia is not seeking coverage for itself by virtue of assuming a third-party's rights; it is instead seeking to vindicate its own contractual rights and secure a declaratory judgment that Evanston provide coverage to covered third parties per the terms of its contract with Incinia. Accordingly, Incinia has standing to pursue its claims and that portion of the motion to dismiss is denied.

### III. DEFENDANTS' COVERAGE ARUMENTS FAIL BECAUSE, BY ITS PLAIN TEXT, THE CARVEOUT IS NOT LIMITED TO BREACH-OF-CONTRACT CLAIMS

The next issue is whether Hollister and CityMeals are covered by the Policy. In resolving this issue, the Court limits its analysis to Defendants' arguments about why coverage does not apply to those entities. *Square D Co. v. Niagara Frontier Tariff Bureau*, 760 F.2d 1347, 1365 (2d Cir. 1985).

As explained previously, the Policy contains an exclusion of coverage for "bodily injury" of an employee of the Named Insured (the "Employee Exclusion" or the "Exclusion"). Compl. ¶ 20; *see* Dkt. No. 1-7 at 36–37. The Policy features a carveout from the Exclusion, however: "This exclusion does not apply to liability assumed by the insured under an 'insured contract.'" (the "Insured-Contract Carveout" or the "Carveout"). Compl. ¶ 20; Dkt. No. 1-7 at 37. The Policy defines an insured contract as "part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for 'bodily injury' . . . provided that 'bodily injury' . . . is caused, in whole or in part, by you or by those acting on your behalf." Compl. ¶ 20; Dkt. No. 1-7 at 90. To summarize, the Employee Exclusion provides that there is no coverage for liability arising from the bodily injury of an Incinia employee. But if Incinia's liability (arising from bodily injury of an Incinia employee) was assumed under an 'insured contract,' then the Employee Exclusion does not apply (by operation of the Carveout), and Evanston would be contractually obligated to provide coverage.

10

In their motion, Defendants highlight that Garcia was an employee of Incinia. Hence, Defendants argue, Evanston properly denied CityMeals and Hollister coverage because the Employee Exclusion applied.[5] In response, Incinia highlights that the Master Agreement obligates Incinia to "defend" and "indemnify" CityMeals and Hollister from all liability. Incinia contends that the Master Agreement thus constituted an "insured contract" under the Policy and, therefore, that the Employee Exclusion does not apply to CityMeals and Hollister by operation of the Insured-Contract Carveout. Defendants' response is that the Insured-Contract Carveout applies to breach-of-contract claims only. Reply at 4–5. Because Garcia in the Underlying Action brings statutory claims (not breach-of-contract claims) against CityMeals and Hollister, Defendants argue, the Insured-Contract Carveout does not apply, and Evanston properly denied coverage due to the Employee Exclusion. *Id.* In their papers, Defendants do not challenge that the Master Agreement comprises an "insured contract." Nor do Defendants challenge Plaintiff's argument that the Carveout would apply to CityMeals and Hollister' liability in the underlying action. Defendants' sole operative argument is that the Carveout applies only to claims for breach of contract.

The Court rejects that argument. Construing the Policy's text,[6] the Insured-Contract Carveout applies to "liability assumed by the insured *under* the 'insured contract.'" Compl. ¶ 20.

---

[5] Defendants do not explain why the Employee Exclusion bars coverage for CityMeals and Hollister but does not bar coverage for Incinia.

[6] A court sitting in diversity must apply the substantive law of the forum state. *Principal Natl' Life Ins. Co. v. Coassin*, 884 F.3d 130, 143 (2d Cir. 2018). Sitting in New York, the Court applies New York law concerning contract interpretation. In interpreting a policy, a court gives all terms their plain meaning. *Mount Vernon Fire Ins. Co. v. Belize NY, Inc.*, 277 F.3d 232, 237 (2d Cir. 2002) ("The wording of limitations of qualifications, as in all 'language found in insurance policies should be examined in light of the business purposes sought to be achieved by the parties and the plain meaning of the words chosen by them to effect those purposes.'" (quoting *Newmont Mines Ltd. v. Hanover Ins. Co.*, 784 F.2d 127, 135 (2d Cir. 1986)). Ambiguities in exclusionary clauses are "to be construed against the insurer." *Covington*

11

(emphasis added). Nowhere does the Carveout distinguish between the *types* of liability, only that it be assumed *under* the insured contract. The relevant 'insured contract' in this case, *i.e.*, the Master Agreement, obligates Incinia to defend, indemnify, and hold harmless CityMeals and Hollister from "*any liability* for damage because of bodily injury." Compl. ¶ 15 (emphasis added). Accordingly, the liability that Incinia assumed under the Master Agreement is not limited to those arising from breach of contract. Because the Carveout applies to "liability assumed by the insured under the 'insured contract,'" and Incinia assumed "any liability" under the Master Agreement, the Carveout is not limited to breach-of-contract claims. *Accord United States Parcel Serv. v. Lexington Ins. Grp.*, 983 F. Supp. 2d 258, 264 (S.D.N.Y. 2013) ("The GSA is an 'insured contract' because it pertains to Adelis's business, and provides that Adelis will assume the tort liability of UPS for the bodily injuries of third parties. Thus, the Policy covers UPS to the extent that the GSA legally obligates Adelis to pay for Chase's bodily injury.").

As further evidence of this conclusion, the Policy defines an "insured contract" as one that assumes "tort liability." Compl. ¶ 20. This definition would make little sense if the Carveout did not apply in instances of "tort liability" and only applied to liability from breach-of-contract claims.[7]

---

*Specialty Ins. Co. v. Indian Lookout Country Club, Inc.*, 62 F.4th 748, 753 (2d Cir. 2023) (quoting *Ace Wire & Cable Co. v. Aetna Cas. & Sur. Co.*, 60 N.Y.2d 390, 398, 469 N.Y.S.2d 655, 457 N.E.2d 761 (1983)). And "courts are not free to disregard the plain meaning of the policy language to find an ambiguity where none exists." *Conlon v. Allstate Vehicle & Prop. Ins. Co.*, 152 A.D.3d 488, 58 N.Y.S. 3d 495, 498 (2017).

[7] Defendants cite several New York State-court cases for the proposition that "insured contract" carveouts apply to liability from breach-of-contract claims only. But these cases do not support Defendants' position. In *VGFC Realty II, LLC v. D'Angelo*, for example, the plaintiff had not entered a contract under which it had assumed liability, compelling the State court's conclusion that the carveout did not apply. No. 28211/11, 2016 WL 730506, at *5 (N.Y. Sup. Ct. Feb. 16, 2011). Defendants' reliance on this case is misplaced absent a meritorious argument that the Master Agreement does not constitute an 'insured contract' under the Policy.

12

Accordingly, Evanston's motion to dismiss Incinia's claims against it is denied.

## IV. INCINIA HAS FAILED TO STATE A CLAIM AGAINST MSI AND THUS THE COURT WILL DISMISS MSI FROM THIS ACTION

Finally, Defendants move to dismiss MSI from this action. Defendants cite that MSI is not a party to the Policy. Mot. at 12. They argue that a non-signatory to a contract is liable in a breach-of-contract action in limited instances, including where the non-signatory assumed obligations of the contract, was assigned the contract, or was in privity with a party to the contract. *Id.* at 13. And Defendants highlight that the Complaint does not allege that any of those unique circumstances apply to this case. *Id.* Defendants also present the Court with several New York state court decisions refusing to impute an insurer's liability onto a claims administrator. *See id.* at 14–16. And Defendants submit that—on the face of the complaint—there is no claim for relief against MSI that is plausible on its face. The Court agrees.

The Complaint is devoid of any allegation that MSI is a signatory to the Policy or could in any way be held liable for Evanston's alleged breach thereof. The Complaint does not allege that MSI is in privity with Evanston or assumed or was assigned the obligations of the contract. MSI only features in the Complaint—besides references to MSI in non-relevant summaries of communications between attorneys—as the entity that informed CityMeals and Hollister that Evanston was denying them coverage. *See* Compl. ¶ 28. But Incinia does not allege that MSI had any hand in making that decision or has the power to reverse it. Even construing the Complaint liberally, the Court is unable to infer on what basis—if any—Plaintiff is seeking to hold MSI liable. Accordingly, the Complaint fails to state a claim against MSI.

Plaintiff responds that the Court should deny the motion to dismiss because "Defendants have submitted nothing to establish that [MSI] was acting *solely* as Evanston's claims administrator." Opp. 23. Plaintiff also argues that the State court case *Prince Seating Corp. v.*

13

*QBE Insurance Company* "contemplates" that Defendants must provide a higher level of proof "on a motion for dismissal." *Id.* at 24.

Plaintiff's argument reveals a fundamental misunderstanding about its burden at this juncture. First, *Prince Seating Corp.*—a State court case—cannot address the applicable standard for a 12(b)(6) motion brought under the Federal Rules of Civil Procedure. And second, Defendants have no burden to prove that MSI is solely acting as a claims administrator. Instead, *Incinia* must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Accordingly, the onus was on Incinia to both allege that MSI is acting in some other capacity, explain why that fact would plausibly entitle Incinia to relief against MSI, and provide sufficient factual matter to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Because Plaintiff has fallen short of meeting that burden, the Court will grant Defendants' motion to dismiss MSI from this action.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED as to the dismissal of MSI from this action and DENIED in all other respects.

The Clerk of Court is respectfully directed to terminate Dkt. No. 29.

Dated: September 30, 2025
New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge